UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
-----------------------------------------------------------------X
PONDEROSA TWINS PLUS ONE and
RICKY SPICER, individually and on behalf of all        Civil Case No.: 3:16-cv-005648-VC
others similarly situated,

                      Plaintiffs,              **AMENDED CLASS ACTION**
                                                                                 **COMPLAINT**
            v.

DEEZER, INC. and SOUNDCLOUD, INC.,              **JURY DEMAND**

                      Defendants.

-----------------------------------------------------------------X

## PRELIMINARY STATEMENT

Plaintiff Ricky Spicer, by his attorneys Napoli Shkolnik PLLC and Imbesi Law P.C., files this action on behalf of himself and all other similarly situated owners of sound recordings, against Deezer, Inc. and Soundcloud, Inc., (collectively, "Defendants") for their unauthorized and unlicensed use of sound recordings created before February 15, 1972 (the "Pre-1972 Recordings") within the State of California.

Defendants operate music services, profiting from their exploitation of Pre-1972 Recordings by charging subscription fees and selling advertisements. Defendants have operated without the proper licenses from the owners of the Pre-1972 Recordings and are liable under California law for violation of California Code § 980(a)(2), misappropriation, violation of California Business and Professions Code § 17200 and conversion.

## PARTIES

1. Plaintiff Ricky Spicer is a resident of Ohio.

2. Plaintiff Ponderosa Twins Plus One is a now defunct music quintet whose members include Alvin and Alfred Pelham, now deceased, and Kirk and Keith Gardner, both currently incarcerated, as well as Plaintiff Ricky Spicer.

3. Plaintiff brings this action individually and on behalf of those similarly situated who hold rights in Pre-1972 sound recordings and whose pre-1972 Recordings were used and are currently being used within the State of California without permission, license, and compensation.

4. Defendant Deezer, Inc. is a foreign Corporation having its principal place of business at 12 Rue d'Athènes, 75009 Paris, France.

5. Defendant SoundCloud, Inc. is a foreign Corporation with its headquarters at Rheinsberger Str. 76/77, 10115 Berlin, Germany

## JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction over this action pursuant to the Class Action Fairness Act which commands federal jurisdiction in a class action where at least one plaintiff or one member of the class is diverse from at least one defendant, where there are at least 100 members of the proposed class, and the amount in controversy exceeds the sum or value of $5,000,000 to a reasonable probability.

7. This Court further has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 and is between citizens of different states.

8. This Court has personal jurisdiction over Defendants because they conduct business in California. Defendants solicit and serve California customers through their interactive websites and on-air advertising. Defendants own numerous radio stations in California, advertise their internet and terrestrial radio services in California, and offer their music application through these stations.

9. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred and or emanated from this District, and Defendants have caused harm to class members residing in this District.

## STATEMENT OF FACTS

### A. Ricky Spicer

10. Mr. Spicer grew up in Ohio. When he was three (3) years old, his biological parents separated, and his mother retained sole custody of Mr. Spicer and his siblings.

11. Mr. Spicer's mother was injured in an automobile accident when he was a child, which rendered her comatose for a significant amount of time. Mr. Spicer's mother survived but the injuries caused her to suffer severe emotional distress throughout the remainder of her life.

12. In 1968, Mr. Spicer's mother experienced a psychological injury rendering her unable to care for Mr. Spicer and his siblings. Mr. Spicer and his brother and sister were admitted to a group home operated by the state of Ohio, where they lived together for nine (9) months.

13. After nine (9) months of living together, in 1969, Mr. Spicer's sister was admitted to a separate home for girls and Mr. Spicer's brother and he were admitted to a group home for boys, known as "Ohio Boys Town."

14. Mr. Spicer was twelve (12) years of age when he lived at Ohio Boys Town. During that time, he began to sing with a couple of boys that lived in his neighborhood. Mr. Spicer and his friends would practice singing extensively, utilizing any available time after school and on weekends.

15. In 1969, Mr. Spicer and his friends auditioned for a talent contest at a local high school and performed exceptionally. The following night, Mr. Spicer and his friends returned to the school to perform again. Because of the boys' exceptional performance on the previous night, many people attended, including individuals apparently engaged in the recording business.

16. After their performance, the group was approached by Tony Wilson. Prior to the meeting, Mr. Spicer did not know Mr. Wilson. Mr. Wilson gave Mr. Spicer a business card and informed him that he wanted to record songs with another local group, at a studio operated by Mr. Wilson's boss, Chuck Brown ("Mr. Brown"), owner of Saru Records ("Saru").

**B. The Ponderosa Twins Plus One**

17. Subsequently, Mr. Brown introduced Mr. Spicer to the members of the singing group "The Ponderosa Twins." At the time, the members of the Ponderosa Twins were Alvin and Alfred Pelham and Keith and Kirk Gardner.

18. After an informal meeting, Chuck Brown convinced Mr. Spicer to record songs with The Ponderosa Twins. The boys sung well together and decided to form the singing group The Ponderosa Twins Plus One (hereinafter "the Group"), Ricky being the "plus One."

19. The Group was initially managed by Mr. Brown under his Astroscope Record Label and had a distribution deal in place with Sylvia Robinson, owner of All Platinum Records.

20. On October 12, 1970, when Mr. Spicer was twelve (12), the Group naively signed a personal services contract and recording agreement. As a minor, Mr. Spicer lacked the capacity

4

to legally bind himself to those agreements, which therefore would become voidable upon reaching the age of majority.

21. The Group released 6-sided vinyl records, which were compiled and released on the Group's first studio album, "2 + 2 = 1" ("the Album"). The Album included singles such as the classics "You Send Me,", "I Remember You," "Why Do Fools Fall in Love," and most notably, "Bound." Such songs can now be listened to on Defendants' music platforms.

22. The releases received widespread acclaim, especially "Bound."

23. Mr. Spicer was the lead vocalist when the group recorded "Bound." His voice is distinctly heard throughout the song, including its chorus.

24. Mr. Spicer's father and Chuck Brown signed the personal services contract and recording agreement as his purported legal guardians. However, at the time, Mr. Spicer's father was not his guardian; the State of Ohio was.

25. Throughout 1970, The Group toured for months. Although the Group was promised payments for their performances, Mr. Brown and Saru failed to make any payments to Mr. Spicer or the other members of the Group for any performances. In 1975, the group fell apart due to the lack of royalties and lack of revenue from their live shows.

26. Despite his youth, Mr. Spicer managed to accomplish success in the music industry, going on to release several popular songs and performing with Gladys Knight and James Brown.

27. Despite his extraordinary talent, his performances, and other accomplishments, Mr. Spicer was never fairly compensated for the songs recorded with The Group.

28.     Mr. Spicer's fellow members of The Group, Alvin and Alfred Pelham are now deceased, and Kirk and Keith Gardner are currently incarcerated.  Mr. Spicer maintains a friendly relationship Kirk and Keith Gardner and the relatives of Alvin and Alfred Pelham.

29.     As evidence of Kirk and Keith Gardner's trust of Mr. Spicer, both have conveyed a power of attorney to Mr. Spicer, which enables him to fully represent the living members of the Group.

30.     Mr. Spicer is the only living member of The Group able to fully detail the group's history and protect the group's legal rights.

C.  **Defendants' Unlawful Conduct**

31.     Defendants have millions of subscribers – for example, SoundCloud has 76 million registered users and Deezer has 14 million monthly active users.

32.     Defendants operate music applications with functions that operate in a similar way. For example, SoundCloud offers internet radio services in the form of customizable music "stations" that stream music to users on the internet. To create a radio station, all a user has to do is enter the name of a singer, such as The Group, and the application will create a radio station curated to match the genre of that singer or music group. Not only will the station play songs from the group, but also similar popular music from the genre.

33.     Defendants' applications also have features that allow the user to save a given song, such as "Bound," to their own personal music library supported by cloud technology. This cloud service operates as an external, intangible storage space that is accessible to any user, anywhere on the planet, so long as they can log into their account from a smartphone, tablet, or other compatible device.

34.     To populate Defendants' musical databases and to stream sound recordings to the public, Defendants have reproduced and copied, and continue to reproduce and copy, Pre-1972 Recordings, including to one or more servers and storage devices, and uses technology or systems that results in a copy of Pre-1972 Recordings being distributed to its' users computers or storage devices.

35.     Mr. Spicer owns the rights inherent in the sound recording of "Bound," as well as those inherent in the remaining sound recordings featured on the Group's albums. These rights include the right to reproduce the copyrighted work, the right to distribute copies of the work and the right to perform the work publicly – all of which requires payments by those who reproduce, distribute and perform the recordings.

36.     Defendants knowingly reproduce, distribute or otherwise exploit Pre-1972 Recordings, without a license from Plaintiff or his consent or authorization.

37.     Defendants offer its music streaming services to the public on either a non-subscription or subscription basis. Users can access their saved music and The Group's songs on a variety of internet platforms, including computers, digital media devices, tablets, video game consoles, and smartphones.

38.     A radio or music streaming service must ensure that its internet-based and traditional broadcasts of copyrighted sound recordings are authorized and must arrange to pay royalties before it reproduces, distributes or publicly performs the sound recordings. A radio or music streaming service must also arrange to pay royalties to the owner of a sound recording each time the service reproduces the sound recording for purposes of archiving it, maintaining it, and streaming it online. If the service fails to arrange and pay required royalties, the use is unauthorized under California law.

39. Defendants generate revenue through subscription fees, advertising, or both. They profit by pirating the Class's Pre-1972 Recordings without permission, license, or compensation.

40. Users of Defendants' customizable stations hear advertisements at periodic intervals between tracks and may skip only limited tracks per station per hour and per day across all stations. Skipping a track often results in advertising broadcast.

41. Defendants' numerous internet and terrestrial radio broadcasts have included, and continue to include, countless performance of Pre-1972 Recordings, all of which have been and continue to be made without any permission from or payment to the owners of the copyright in the Recordings.

42. None of the defendants have received a valid license from Plaintiff to perform, distribute, reproduce or otherwise appropriate the intellectual property owned by Mr. Spicer and the similarly situated Plaintiffs.

43. Defendants never contracted with Mr. Spicer or any member of the Group to use any part of The Group's sound recordings.

44. Defendants exploited, and continue to exploit, Plaintiffs' and Class Members' rights without permission and compensation.

## CLASS ALLEGATIONS

45. Named Plaintiff brings this action under Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on his own behalf and on behalf of the following class of plaintiffs (the "Class"):

> All owners of sound recordings of musical performances that were "fixed" (i.e. recorded) prior to February 15, 1972, which sound recordings were reproduced, performed, distributed and/or otherwise exploited by Defendants within the State of California.

46. The persons in the Class are so numerous that individual joinder of all members is impracticable under the circumstances. Although the precise number of such persons is unknown, the exact size of the Class is easily ascertainable, as each class member can be identified by using Defendants' records. Plaintiffs allege upon information and belief that there are many thousands of Class members.

47. Common questions of law and fact specific to the Class predominate over any questions affecting individual members, including:

   a. Whether Defendants reproduced, copied, performed, or otherwise exploited Pre-1972 Recordings in its internet or terrestrial radio services or both without authorization or permission;

   b. Whether Defendants' conduct constitutes misappropriation;

   c. Whether Defendants' conduct constitutes unfair competition;

   d. Whether class members have been damaged by Defendants' conduct, and the amount of such damages;

   e. Whether punitive damages are appropriate and the amount of such damages;

   f. Whether an Order enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services is appropriate and on what terms;

   g. Whether Defendants have been unjustly enriched;

   h. Whether Defendants have converted Plaintiff's' property to their own use; and

   i. Whether Defendants should disgorge their unlawful profits, and the amounts of such profits.

48. The Named Class Representative's claims are typical of the Class's claims, as they arise out of the same course of conduct and the same legal theories as the rest of the Class,

and Plaintiffs challenge the practices and course of conduct engaged in by Defendants with respect to the Class as a whole.

49. Excluded from the class are Defendants, their employees, co-conspirators, officers, directors, legal representatives, heirs successors, and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees; and the judicial officers and associated court staff assigned to this case.

50. Plaintiffs will fairly and adequately represent the interests of the class. They will vigorously pursue the claims and have no antagonistic conflict. Plaintiffs have retained counsel who are able and experience class action litigators and are familiar with representing plaintiffs in large scale claims.

51. Defendants have acted or refused to act on grounds that apply generally to the class, and final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole. A class is also appropriate because Defendants have acted and refused to act in a manner that, upon information and belief, generally apply to thousands of individuals, thereby making injunctive relief appropriate for the class as a whole.

52. Questions of law or fact common to class members predominate over any questions affecting only individual members. Resolution of this action on a class wide basis is superior to other available methods and is a fair and efficient adjudication of the controversy because in the context of this litigation, most individual class members cannot commit large financial resources to prosecute lawsuits against Defendants. Further, separate actions by individuals would create a risk of inconsistent or varying judgments, which would establish incompatible standards of conduct for Defendants and substantially impede or impair the ability

of class members to pursue their claims. It is not anticipated that there would be difficulties in managing this case as a class action.

53. Plaintiffs reserve the right to amend all class allegations as appropriate, and to request any state law subclass or other subclasses if necessary, upon completion of class-related discovery and motions for class certification.

## COUNT I
## VIOLATION OF CALIFORNIA CIVIL CODE § 980(a)(2)

54. Plaintiffs incorporate by reference the allegation in the above paragraphs as if fully set forth herein.

55. Pursuant to California Civil Code § 980(a)(2), Plaintiffs possess exclusive ownership interests in and to the Pre-1972 Recordings.

56. By its unauthorized reproduction, distribution, or other exploitation of Pre-1972 Recordings in California, Defendants have violated California Civil Code §23 980(a)(2).

57. Defendants have copied the Pre-1972 Recordings without compensating Plaintiffs.

58. As a direct and proximate result of Defendants' violation, Defendants have received and retained money that does not belong to them but belongs to Plaintiffs

59. As a direct and proximate result of Defendants' violation of California Civil Code § 980(a)(2), Plaintiffs have suffered, and continue to suffer, significant damages.

60. Defendants' conduct is causing, and unless enjoined by this Court will continue to cause, irreparable injury to Plaintiffs that cannot fully be compensated by money. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to temporary, preliminary, and permanent

injunctions, prohibiting further violation of the ownership interests of Plaintiffs in the Pre-1972 recordings.

## COUNT II
## MISAPPROPRIATION

61. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

62. Pursuant to California Civil Code § 980(a)(2) and California common law, Plaintiffs possess exclusive ownership interests in and to the Pre-1972 Recordings, including the artistic performances embodied in those recordings.

63. Plaintiffs invested substantial time and money in creating and developing the Pre-1972 Recordings.

64. Because Defendants failed to obtain licenses, they did not incur any of the costs that a licensee is obligated to pay in order to reproduce, perform, distribute or otherwise exploit Pre-1972 Recordings.

65. Defendants have misappropriated, and continues to misappropriate, for its own commercial benefit, the exclusive ownership interests in and to the Pre-1972 Recordings.

66. As a direct and proximate result of Defendants' misappropriation, Defendants have received and retained money and value that belongs to Plaintiffs.

67. As a direct and proximate result of Defendants' misappropriation, Plaintiffs have suffered, and continue to suffer, significant damages.

68. Upon information and belief, Defendants acted with oppression, fraud, malice and/or in disregard of Plaintiffs' rights. Therefore, Plaintiffs are entitled to an award of punitive damages against Defendant.

69. Defendants' has caused, and unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot fully be compensated in money. Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of the ownership interests of Plaintiffs in the Pre-1972 recordings.

## COUNT III
## UNFAIR BUSINESS PRACTICES

70. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

71. Pursuant to California Civil Code § 980(a)(2) and California common law, Plaintiffs possess exclusive ownership interests in and to the Pre-1972 Recordings, including the artistic performances embodied in those recordings.

72. Defendants' conduct in reproducing, performing, distributing, or other exploitation of the Pre-1972 Recordings constitutes a misappropriation of Plaintiffs' property rights and a violation of California Civil Code § 980(a)(2).

73. By misappropriating Plaintiffs' property rights and by violating California Civil Code § 980(a)(2), Defendants have engaged in unfair business practices in violation of California Business & Professions Code § 17200.

74. As a direct and proximate consequence of its violation of California Business & Professions Code § 17200, Defendants have received and retained money that should have been provided to Plaintiffs.

75. As a direct and proximate result of Defendants' conduct, Plaintiffs are entitled to restitution and disgorgement under California Business & Professions Code § 17200.

76. Upon information and belief, Defendants acted with oppression, fraud, malice and/or disregard for Plaintiffs' rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

77. Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot fully be compensated in numeric terms. Plaintiffs have no adequate remedy-at-law. Plaintiffs are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of the ownership interests of Plaintiffs and each member of the class in the Pre-1972 Recordings.

## COUNT IV
## CONVERSION

78. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

79. Plaintiff is, and at all relevant time was, the exclusive owner of the right, title and interest in the Pre-1972 Recordings.

80. By their acts and conduct alleged above, Defendants have converted Plaintiffs' property rights in the Pre-1972 Recordings for their own use and wrongful disposition for financial gain.

81. As a direct and proximate result of its conversion, Defendants have received and retained money that belongs to Plaintiffs.

82. As a direct and proximate consequence of Defendants' conversion and unlawful use, including but not limited to reproduction and distribution, Plaintiffs have suffered and continue to suffer significant damages.

83. Upon information and belief, Defendants acted with oppression, fraud, malice and/or in disregard of Plaintiffs' rights. Accordingly, Plaintiffs are entitled to an award of punitive damages against Defendants.

84. Defendants' conduct is causing, and unless enjoined by this Court, will continue to cause, Plaintiffs irreparable injury that cannot be completely quantified in numeric terms. Plaintiffs have no adequate remedy-at-law. Plaintiffs are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of the ownership interests of Plaintiffs in the Pre-1972 Recordings.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the proposed class, requests relief against Defendants as follows:

a) Certification of the action as a Class Action pursuant to the Federal Rule of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

b) Actual damages, punitive damages, treble damages, and such other relief as provided by the statutes and common law cited herein;

c) Disgorgement of all profits earned by Defendants from exploiting Pre-1972 Recordings;

d) A constructive trust on any money acquired by means of Defendant's' conversion, including all gross receipts attributable to Defendants' conversion of the Pre-1972 Recordings;

e) Prejudgment and post judgment interest on any monetary relief;

f) Equitable relief enjoining future unauthorized use of Pre-1972 Recordings in internet and terrestrial radio services;

g) The costs of bringing this suit, including reasonable attorneys' fees and costs; and

h) All and any other relief to which Plaintiff and Class Members may be entitled at law or inequity.

Dated:   July 17, 2020
                                        **NAPOLI SHKOLNIK PLLC**

By: */s/ Salvatore C. Badala*

Salvatore C. Badala
sbadala@napolilaw.com
360 Lexington Avenue, 11th Fl.
New York, NY 10017
Telephone: (212) 397-1000
Facsimile: (646) 843-7603

**IMBESI LAW P.C.**

Brittany Weiner (*pro hac vice* to be filed)
1501 Broadway, Suite 1915
New York NY 10036
Telephone: (646) 767-2271
Facsimile: (212) 658-9177

*Attorneys for Plaintiffs Ponderosa Twins Plus One and Ricky Spicer*

CERTIFICATE OF SERVICE

The undersigned attorney certifies that on July 17, 2020, he electronically filed a copy of the attached via the CM/ECF filing system, which sent notification of such filing to all Filing Users.

                                                      /s/ Salvatore C. Badala